IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KENNETH ALLEN OVERTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:17-cv-272-WC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

In November 2013, Kenneth Allen Overton ("Plaintiff") filed an application for Disability Insurance Benefits under the Social Security Act ("the Act") alleging disability beginning on April 1, 2013. Plaintiff's application for SSI was denied initially and upon reconsideration. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on September 22, 2015. Following the hearing, the ALJ issued a decision finding Plaintiff had not been under a disability since April 1, 2013, as defined in the Social Security Act. Plaintiff appealed to the Appeals Council and, on March 1, 2017, the Appeals Council denied review of the ALJ's decision. Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 10); Def.'s Consent to Jurisdiction (Doc. 11). Based on the court's review of the record and the briefs of the parties, the court REVERSES the decision of the Commissioner and REMANDS the matter for further proceedings.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a prima facie case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

[4] *See* 20 C.F.R. pt. 404 Subpt. P, app. 2.

3

to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was 55 years old at the time of his alleged onset date with one year of college and past relevant work as an aircraft mechanic. Tr. 52. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has

4

not engaged in substantial gainful activity since April 1, 2013[.]" Tr. 24. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "major depressive disorder (MDD), generalized anxiety disorder (GAD), and panic disorder without agoraphobia[.]" Tr. 24. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed" in the Social Security Act. Tr. 25. Next, at Step Four, the ALJ articulated Plaintiff's RFC, stating Plaintiff:

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to the simple routine tasks of unskilled work requiring simple work decisions and infrequent change in the work setting that is gradually introduced. He can interact with coworkers and supervisors on a basic level, but needs a well-spaced work environment to reduce the amount of interaction required. He should have no contact with the public.

Tr. 26. Having consulted with a VE at the hearing, the ALJ concluded that Plaintiff was unable to perform any past relevant work. Tr. 34. At Step Five, the ALJ determined that, "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" Tr. 34. These jobs included those of a recycler; laundry worker; and hand packager. Tr. 35. Finally, based upon the testimony of the VE, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, at any time from April 1, 2013, the date the application was filed[.]" Tr. 35.

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents three issues for the court to consider in its review of the Commissioner's decision: (1) whether the ALJ erroneously rejected the opinion of

5

Plaintiff's treating psychiatrist; (2) whether the ALJ erroneously relied on non-treating source opinions; and (3) whether the ALJ erred in his credibility analysis of Plaintiff's statements regarding the intensity, persistence, and limiting effects of his psychological symptoms. Doc. 16 at 1.

V.  **DISCUSSION**

**A.  Whether the ALJ erroneously rejected the opinion of Plaintiff's treating psychiatrist.**

Plaintiff argues that the ALJ erred when he afforded "little weight" to the opinion of his treating psychiatrist, Dr. J. Chris Strunk, who began treating Plaintiff in November 2012. Doc. 16 at 5-9; Tr. 33. Dr. Strunk completed a Medical Source Statement-Mental Questionnaire ("MSS-MQ") in which he opined that Plaintiff had "moderate" limitations in his ability to ask simple questions or request assistance. Tr. 276. Dr. Strunk opined that Plaintiff had "extreme" limitations in the remaining areas, which include: his ability to interact appropriately with the general public; his ability to get along with co-workers and peers; his constriction of interests; his deterioration in personal habits; his restriction of daily activities; his ability to understand, remember, and carry out simple instructions; his ability to understand, remember, and carry out complex instructions; his ability to understand, remember, and carry out repetitive tasks; his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; his ability to sustain a routine without supervision; his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at

6

a consistent pace without an unreasonable number and length of rest periods; his ability to make simple work-related decisions; his ability to respond appropriately to supervision; his ability to respond appropriately to changes in the work setting; his ability to respond to customary work pressures; and his ability to be aware of normal hazards and take appropriate precautions. Tr. 276-78. Dr. Strunk also opined, in a letter dated December 12, 2014, that Plaintiff has been unable to work since April 4, 2013, due to PTSD and major depressive disorder. Tr. 281.

The medical opinion of a treating physician is entitled to substantial or considerable weight unless the ALJ articulates good cause for rejecting that opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("Absent good cause, an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight.") (internal citations omitted). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis*, 125 F.3d at 1440 (citing 20 CFR § 404.1527 (d)(2)). "Good cause exists [to discount a treating physician's opinion] 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical

7

records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). In other words, the Eleventh Circuit has found good cause for discounting a treating physician's opinion when the opinion "is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)). Additionally, there is good cause where the treating physician's opinion is "inconsistent with [his] own medical records[.]" *Roth v. Astrue*, 249 F. App'x 167, 168 (11th Cir. 2007) (citing *Lewis*, 125 F.3d at 1440). Thus, "[w]hen the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Schuhardt v. Astrue*, 303 F. App'x 757, 759 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Finally, there are some opinions provided by treating physicians that should not be afforded controlling weight simply because the opinion is one that is reserved to the Commissioner. For example, although a physician's opinion about what a claimant can or cannot do is relevant, those opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c*); see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). Similarly, a physician's opinion that a claimant can or cannot work is an issue reserved to the Commissioner and, as such, is not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that [a claimant is] 'disabled' or 'unable

8

to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."); *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533-34 (11th Cir. 2014) (noting that "the Commissioner, not a claimant's physician, is responsible for determining whether the claimant is statutorily disabled").

Here, the ALJ afforded Dr. Strunk's opinion expressed within the MSS-MQ "little weight" and reasoned as follows:

> Although Dr. Strunk indicated that the claimant had extreme limitation in all but one area of the form, his treatment records show the claimant's attention span and concentration were often rated as good and his memory was intact. The extreme limitations assigned are also inconsistent with the fact that Dr. Strunk has not recommended inpatient treatment. Since Dr. Strunk's extreme limitations are not supported by the substantial evidence in the record, the opinion . . . cannot be given controlling weight[.]

Tr. 33. Thus, the undersigned must determine if the ALJ provided good cause, based upon the two reasons set forth above, to afford Dr. Strunk's opinion—as Plaintiff's treating physician—little weight.

> *(1) The fact that Dr. Strunk did not recommend inpatient treatment for Plaintiff does not provide good cause to discount his opinion that Plaintiff was extremely limited in multiple areas of the MSS-MQ.*

The ALJ's reliance upon the fact that Dr. Strunk never recommended inpatient treatment for Plaintiff does not provide good cause for the ALJ to discount Dr. Strunk's opinion and to afford it little weight. The MSS-MQ completed by Dr. Strunk evaluated Plaintiff's abilities to function in the workplace and to perform workplace activities. Tr. 276-78. It did not evaluate whether Plaintiff was able to function in society as a whole, which might suggest Plaintiff's need for inpatient treatment. As such, just because Dr. Strunk never recommended that Plaintiff receive inpatient treatment does not undermine

9

his opinion that Plaintiff is extremely limited in certain work-related areas. This is because Plaintiff's inability to function in the workplace is not necessarily indicative of his need for inpatient treatment. In other words, it is entirely possible that Dr. Strunk could find Plaintiff extremely limited in work-related areas, yet not find those same extreme limitations worthy of hospitalization. Surely, the nature of psychotropic medications and the compliance of the patient with such medication "militate against the possibility that Plaintiff would have to be admitted to the hospital for [his] psychological impairments." *Wallace v. Barnhart*, 256 F. Supp. 2d 1360, 1372 (S.D. Fla. 2003). By all indications in the record, Plaintiff appears to be compliant with his medication, which has likely contributed to his lack of inpatient treatment; however, this does not mean that Plaintiff is not receiving aggressive treatment from Dr. Strunk. Nor does it mean that Plaintiff, despite his compliance on his medications, would not exhibit extreme limitations in the workplace environment. Thus, the fact that Dr. Strunk never recommended inpatient treatment for Plaintiff—or the fact that Plaintiff was never hospitalized for his psychiatric symptoms—does not provide good cause for discounting Dr. Strunk's opinion that Plaintiff is extremely limited in the workplace. *See id.* at 1372.

    *(2) The ALJ's reliance upon perceived inconsistencies in Dr. Strunk's treatment notes is misplaced.*

The ALJ's reliance upon perceived inconsistencies in Dr. Strunk's treatment records does not provide good cause for the ALJ to discount the opinion of Dr. Strunk and afford it little weight. While it is clear that such reasoning could provide good cause to discount the opinion of a treating physician, *see, e.g., Roth,* 249 F. App'x at 168 (noting that there

is good cause to discount a treating physician's opinion when it is "inconsistent with [his] own medical records[.]"), such reliance in this case is misplaced for at least two reasons.

First, Dr. Strunk's treatment notes, when read as a whole, do not indicate that Plaintiff's attention span and concentration are good, or that his memory is intact. Dr. Strunk's MSS-MQ was completed on October 23, 2014. Tr. 275. Prior to this date, the ALJ did not note any visit in which Dr. Strunk opined Plaintiff possessed a good attention span and concentration. Instead, the ALJ noted just the opposite. *See* Tr. 29 (ALJ noting that on September 23, 2013; October 31, 2013; and December 16, 2013, Dr. Strunk found Plaintiff to have poor attention span and concentration, and disorganized thought). After this date, the ALJ noted treatment records in which Dr. Strunk opined Plaintiff possessed a good attention span and concentration as well as a memory that was intact. *See* Tr. 31 (ALJ noting that on February 17, 2015; June 1, 2015 and July 23, 2015, Dr. Strunk found Plaintiff to have good attention span and concentration and intact memory). However, there were at least two occasions in between these "good" visits, as noted by the ALJ, in which Plaintiff had poor concentration and attention span. *See* Tr. 31 (ALJ noting that on April 14, 2015; May 4, 2015, Plaintiff's attention span and concentration were poor). It is clear from an independent review of Dr. Strunk's treatment records that a fair amount of flip-flopping has persisted regarding Plaintiff's abilities in these areas. For example, during Plaintiff's April 14, 2015 visit, Dr. Strunk noted:

> Mr. Overton reports that his medications are no longer working. He states his depression is much worse. . . . Patient[']s mood/affect reviewed, and observed to be depressed. . . . Patient's insight/judgment reviewed and are good. . . . His memory is intact. His attention span/concentration reviewed and is poor[.]

11

Tr. 298. During that visit, Dr. Strunk added Effexor to Plaintiff's treatment regimen, and Plaintiff was directed to return in one month. Tr. 298. At the next visit, conducted on May 12, 2015, Plaintiff reported that "he is doing well and this his meds are working well." Tr. 302. Dr. Strunk's notes indicate the following:

> Patient[']s mood/affect reviewed, and observed to be depressed, and anxious. . . . His memory reviewed and is intact. His attention span/concentration reviewed and is good.

Tr. 302. Plaintiff returned to Dr. Strunk two weeks later. During that May 31, 2015, visit, Plaintiff reported that he had "improved with the Effexor." Tr. 300. Dr. Strunk observed:

> Patient[']s mood/affect reviewed, and observed to be depressed and anxious. . . . Patient's insight/judgment reviewed and are good. . . . His memory reviewed and is intact. His attention span/concentration reviewed and is poor.

Tr. 300. Plaintiff returned in two weeks. During the June 1, 2015, visit, Plaintiff reported that he "has again relapsed into depression. He feels hopeless and helpless, as well as sleeping poorly at night." Tr. 304. Dr. Strunk noted the following:

> Patient['s] mood/affect reviewed, and observed to be angry, depressed, and anxious. . . . Patient[']s psychotic thoughts reviewed and he is delusional. . . . Patient's insight/judgement reviewed and are poor. . . . His memory reviewed and is intact. His attention span/concentration reviewed and is good.

Tr. 304.

While the undersigned can agree with the ALJ that, at times, Dr. Strunk concluded that Plaintiff's attention span and concentration were good and his memory was intact, the undersigned cannot agree that those incidents of momentary improvement provide good cause to discount the treatment records of Dr. Strunk. Aside from the flip-flopping evidenced above in some of Plaintiff's most recent treatment records with Dr. Strunk, a

12

mere observation of Dr. Strunk's last treatment record of Plaintiff indicates that, despite Plaintiff's ability to pay attention, recall, and concentrate, Plaintiff was "angry, depressed, and anxious" with delusional thoughts and poor insight and judgment. Dr. Strunk's records, then, when read as a whole, suggest that Plaintiff, while at times seeing improvement in certain areas of his mental functioning, was not cured or even consistently controlled by his medications. To the undersigned, then, the fact that Plaintiff has achieved some improvement in some symptom areas does not indicate that the opinion expressed by Dr. Strunk in the MSS-MQ is inconsistent with his own records. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (finding that the ALJ did not provide good cause to discount the opinion of a treating physician based upon inconsistencies in treatment notes where the notes indicated some "improved mood and energy level"); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (finding that the fact that a person suffering from depression makes some improvement "does not mean that the person's impairment [ ] no longer seriously affect[s] [his] ability to function in a workplace"); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability."). Thus, the undersigned concludes that a few treatment records from Dr. Strunk suggesting that Plaintiff may not be limited in the areas of attention span, concentration, and memory do not provide the ALJ with good cause to discount the opinion of Plaintiff's long-term treating psychiatrist.

Second, the ALJ's reasoning for discounting Dr. Strunk's opinion—i.e., that Dr. Strunk's opinion concerning Plaintiff's extreme limitations conflicts with his own treatment records—does not make sense considering the categories in which Dr. Strunk

13

found Plaintiff to be extremely limited by his psychological conditions. Said differently, the treatment records from Dr. Strunk that indicate Plaintiff has good attention, concentration, and memory do not clash with Dr. Strunk's opinion that Plaintiff is extremely limited in the categories assessed by the MSS-MQ. Indeed, there are multiple categories assessed in the MSS-MQ that have little or nothing to do with attention, concentration, and memory. For example, Dr. Strunk opined that Plaintiff has extreme limitations in, *inter alia*, his ability to interact appropriately with the general public; his ability to get along with co-workers or peers; the deterioration of his personal habits; his ability to perform daily activities; his ability to be punctual; etc. The undersigned would be strained to conclude that these categories are influenced by Plaintiff's ability (or inability) to maintain attention and concentration, or whether his memory is intact.

Further, while there are other categories assessed in the MSS-MQ that involve Plaintiff's ability to concentrate, maintain attention, and remember—i.e., Plaintiff's ability to understand, remember, and carry out repetitive tasks; his ability to maintain attention and concentration for extended periods; his ability to understand, remember, and carry out complex instructions; etc.—those categories are not solely dependent upon Plaintiff's ability to concentrate, maintain attention, and remember. Instead, most, if not all, of those categories involve additional requirements from Plaintiff that could account for Plaintiff's extreme limitations. For example, Dr. Strunk concluded that Plaintiff was extremely limited in his ability to understand, remember, and carry out repetitive tasks. Tr. 276. Assuming *arguendo* that Plaintiff has good concentration skills and an ability to maintain attention, those skills would only address the requirements that Plaintiff understand and

14

remember repetitive tasks. It would not address Plaintiff's ability to *carry out* the repetitive task. Therefore, it is quite possible that Dr. Strunk concluded Plaintiff was extremely limited in this particular assessment—even accepting that Plaintiff's concentration and attention were good—simply because Plaintiff is unable tocarry out repetitive tasks. As another example, Dr. Strunk concluded that Plaintiff was extremely limited in his ability to maintain attention and concentration for extended periods of time. Tr. 276. While Plaintiff may be able to maintain attention and concentration for some period of time as reflected in some of Dr. Strunk's treatment records, Dr. Strunk may have opined that Plaintiff was extremely limited in this area because Plaintiff is unable to do so for *extended periods of time*. Thus, even considering that some treatment records from Dr. Strunk reflect Plaintiff's good concentration, attention, and memory skills, it does not automatically flow from that premise that Dr. Strunk's opinion regarding Plaintiff's extreme limitations in the areas assessed within the MSS-MQ is compromised. Accordingly, the undersigned cannot conclude that the ALJ's reasoning for discounting Dr. Strunk's opinion is supported by substantial evidence in the record and, therefore, cannot conclude that it provides the requisite good cause for discounting Dr. Strunk's opinion expressed in the MSS-MQ.

For the reasons discussed above, the undersigned finds that the ALJ did not provide good cause to discount the opinion of Plaintiff's treating physician, Dr. Strunk. As such, the case should be reversed and remanded for further proceedings with the Commissioner. Because Plaintiff's first issue is worthy of remand, the undersigned will not address Plaintiff's remaining issues.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this matter is REMANDED back to the Commissioner. A separate judgment will issue.

Done this 11th day of July, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE